UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SECURITIES AND EXCHANGE COMMISSION,

                Plaintiff,

      v.

LEONARD J. ADAMS,

                Defendant.

Civil Action No. _____

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") alleges:

## SUMMARY

1.     This case concerns numerous violations by Leonard J. Adams of Rule 105 of Regulation M [17 C.F.R. § 242.105] ("Rule 105"), a rule designed to protect the independent pricing mechanism of the securities market shortly before follow-on and secondary offerings.[1] At all relevant times through October 9, 2007, Rule 105 prohibited covering a short sale with securities obtained in a public offering when the short sale occurred during a restricted period, generally five business days before the pricing of the offering. Since October 9, 2007, Rule 105 prohibits any person who made a short sale during the restricted period from purchasing shares of that issuer offered in a secondary offering.

---

[1] "The first time an issuer conducts a public offering of its securities, the offering is referred to as an initial public offering ("IPO"). Subsequent offerings by the issuer are referred to as follow-on offerings or repeat offerings. A secondary offering is an offering of securities held by security holders, for which there already exist trading markets for the same class of securities as those being offered." Short Selling in Connection With a Public Offering; Proposed Rule, 71 Fed. Reg. 75,002, 75,003 n.12 (Dec. 13, 2006) ("Proposing Release on Rule 105").

2. Adams violated Rule 105 in connection with at least 95 offerings from at least March 2006 through December 2008 (the "Relevant Period"). Adams engaged in a strategy of participating in numerous public companies' secondary offerings of stock in order to improve his access to shares available in initial public offerings underwritten by the same broker-dealers through which he participated in the secondary offerings. Adams' conduct resulted in unlawful gains of $331,387.[2]

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to Sections 21 and 27 of the Securities Exchange Act of 1934 [15 U.S.C. §§ 78u and 78aa] (the "Exchange Act.").

4. Venue is proper in this district under Section 27 of the Exchange Act [15 U.S.C. § 78aa], as a substantial part of the acts and transactions constituting the alleged violations occurred in Massachusetts.

## DEFENDANT

5. Defendant Leonard J. Adams, age 61, is a resident of Boca Raton, Florida, and is a former resident of Newton, Massachusetts.

## OVERVIEW OF RULE 105

6. Prior to October 2007, Rule 105 of Regulation M, "Short Selling in Connection with a Public Offering," provided, in pertinent part:

> In connection with an offering of securities for cash pursuant to a registration statement … filed under the Securities Act, it shall be unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in the offering, if such a short sale occurred during the … period beginning five business days before the pricing of the offered securities and ending with such pricing …

---

[2] In related cease-and-desist proceedings instituted by the Commission, Adams has agreed to an order that he cease and desist from violating Rule 105 and that he pay disgorgement of $331,387 plus prejudgment interest of $16,613. *See In the matter of Leonard J. Adams*, Admin. Pro. No. 3-13885, Exchange Act Rel. No 62072.

7. The Commission amended Rule 105 effective October 9, 2007, to provide, in pertinent part:

> In connection with an offering of equity securities for cash pursuant to a registration statement … filed under the Securities Act of 1933 ("offered securities"), it shall be unlawful for any person to sell short … the security that is the subject of the offering and purchase the offered securities from an underwriter or broker or dealer participating in the offering if such short sale was effected during the period ("Rule 105 restricted period") that is the shorter of the period:
>
> (1) Beginning five business days before the pricing of the offered securities and ending with such pricing; or (2) Beginning with the initial filing of such registration statement … and ending with the pricing.

17 C.F.R. § 242.105(a)(1) (effective October 9, 2007).

8. A short sale is "any sale of a security which the seller does not own or any sale which is consummated by the delivery of a security borrowed by, or for the account of, the seller." 17 C.F.R. § 242.200. The profit or loss on a short sale is determined by the price of the security purchased to cover the short sale, i.e., the price of the security purchased to repay to the lender the borrowed shares originally sold short. Accordingly, a short sale is profitable when the price of the security decreases after the short sale and the security is purchased by the seller for less than it was sold short.

9. Short selling can artificially depress a share's market price, which can lead to lower than anticipated offering prices for secondary and follow-on offerings. This can lead to reduced offering proceeds for the issuer. Thus, Rule 105 is intended to foster secondary and follow-on offering prices that are determined by independent market dynamics and not by potentially manipulative activity.

**FACTS**

10. During the Relevant Period, Adams participated in secondary offerings in order to improve his access to IPO shares. Adams opened or controlled at least 32 brokerage accounts at more than a dozen broker-dealers. When broker-dealers underwrite IPOs, they allocate certain shares to certain customers. For customers such as Adams, these broker-dealers generally allocated IPO shares based upon the amount of commissions and sales credits those customers generated. Because the commissions and sales credits generated by purchases of shares in secondary offerings were substantially greater than commissions generated by open market transactions, Adams agreed to participate in numerous secondary offerings. And to hedge those transactions, he frequently sold short the stock of the issuing companies.

11. During the Relevant Period, Adams engaged in transactions prohibited by Rule 105 on at least 95 occasions and involving secondary offerings by at least 86 issuers. These violations include at least 28 violations prior to October 9, 2007 ("pre-amendment violations"), and at least 67 violations after that date ("post-amendment violations").

**Pre-Amendment Violations**

12. Adams' pre-amendment violations involved two types of transactions: (1) direct covering of short positions with offering shares; and (2) transactions in which, rather than directly covering a short position with offering shares, Adams placed orders before the market opened to both buy shares in the market and sell offering shares in what amounted to riskless transactions.

13. For example, on April 17 and 18, 2007, Adams sold short 8,000 shares of Ashford Hospital Trust ("Ashford") at an average price of $12.17 per share. On April 18, 2007, after the market closed, Ashford priced its secondary offering. On April 19, 2007,

4

Adams purchased 5,500 shares of Ashford stock in the secondary offering at a price of $11.75. He then used these offering shares to cover a portion of his short position and purchased an additional 2,500 shares in the market to cover the remainder of his short position.

14. As an example of what amounted to Adams' riskless transactions, from September 11, 2007 through September 12, 2007, he sold short 24,000 shares of Apollo Investment Corp. ("Apollo") stock at a weighted average price of $20.29 per share. These short sales were made within five days of the date the company priced its secondary offering, which occurred after the market closed on December 4, 2006. Adams then purchased 33,000 shares in the secondary offering at a price of $20.00. On September 13, 2007, before the market opened, Adams placed orders to purchase 24,000 shares of Apollo stock in the market with two broker-dealers and to sell the 33,000 shares of Apollo stock purchased in the secondary offering with two other broker dealers. Those transactions were executed within 18 seconds of each other at the same price of $19.80. By engaging in contemporaneous purchases of shares in the open market and sales of shares he obtained in the secondary offering, Adams in effect sold the offering shares to himself in order to cover his short position in violation of Rule 105.

15. As a result of the conduct described in paragraphs 12-14 above, and from at least March 2006 through October 9, 2007, Adams violated Rule 105 of Regulation M then in effect, which at the time made it "unlawful for any person to cover a short sale with offered securities purchased from an underwriter or broker or dealer participating in an offering, if such short sales occurred during the … period beginning five business days before pricing of the offered securities and ending with such pricing."

**Post-Amendment Violations**

16. An example of Adams' post-amendment violations is his trading in the shares of Wells Fargo in November 2008. From November 3, 2008 through November 6, 2008, Adams sold short 39,900 shares of Wells Fargo stock in six accounts at an average price of $28.87 per share. On November 6, 2008, after the markets closed, Wells Fargo priced its secondary offering. On November 7, 2008, Adams purchased 35,000 Wells Fargo shares at the offering price of $27 per share in connection with that secondary offering. Adams' short sales of Wells Fargo stock were within 5 days of the pricing of the offering and thus fell within the restricted period under Rule 105. As a result, Adams violated Rule 105 when he purchased the Wells Fargo offering shares.

17. As a result of the conduct described in paragraph 16 above, and from October 9, 2007 through December 2008, Adams violated Rule 105 of Regulation M of the Exchange Act, which makes it "unlawful for any person to sell short … the security that is the subject of the offering and purchase the offered securities from an underwriter, broker or dealer participating in the offering if such short sale was effected during the period: (1) Beginning five business days before the pricing of the offered securities and ending with such pricing; or (2) Beginning with the initial filing of such registration statement … and ending with such pricing."

**FIRST CLAIM FOR RELIEF**
**(Short Selling in Connection With a Public Offering)**
**[Pre-Amendment Violations of Rule 105 of Regulation M [17 C.F.R. § 242.105]]**

18. Paragraphs 1 through 17 are re-alleged and incorporated by reference.

19. From at least March 2006 through October 9, 2007, in connection with 28 offerings of securities for cash pursuant to a registration statement filed under the Securities

6

Act, Defendant covered short sales made during the restricted period with offered securities purchased from underwriters or brokers or dealers participating in those public offerings. Each of these public offerings was conducted on a firm commitment basis.

20. By engaging in the foregoing conduct, Defendant violated Rule 105 of Regulation M [17 C.F.R. § 242.105 (2007)].

**SECOND CLAIM FOR RELIEF**
**(Short Selling in Connection With a Public Offering)**
**[Post-Amendment Violations of Rule 105 of Regulation M [17 C.F.R. § 242.105]]**

21. Paragraphs 1 through 17 are re-alleged and incorporated by reference.

22. From October 9, 2007 through December 2008, in connection with 67 offerings of securities for cash pursuant to a registration statement filed under the Securities Act, Defendant sold short the securities that were the subject of the offerings during the restricted period and purchased the offered securities from an underwriter, broker or dealer participating in the offering. Each of these public offerings was conducted on a firm commitment basis.

23. By engaging in the foregoing conduct, Defendant violated Rule 105 of Regulation M [17 C.F.R. § 242.105 (effective October 9, 2007)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter judgment:

a. Ordering Defendant to pay a civil monetary penalty pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

b. Granting such other and further relief as is just and proper.

Respectfully submitted,

 /s/ Kathleen Burdette Shields
Kathleen Burdette Shields, BBO No. 637438
Senior Trial Counsel

Kevin M. Kelcourse, BBO No. 643163
Assistant Regional Director

United States Securities and Exchange Commission
Boston Regional Office
33 Arch Street, 23rd Floor
Boston, MA  02110
(617) 573-8904 (Shields)
shieldska@sec.gov

Dated:   May 11, 2010